UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

SHERI ROSENBAUM,

                Defendant.

Case No. 11-cr-20427

Honorable Patrick J. Duggan

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELEASE ON BOND PENDING APPEAL

After a six-day trial held in December of 2013, a jury convicted Defendant Sheri Rosenbaum of four counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A.  The Court sentenced Defendant in September of 2014, committing her to the custody of the Bureau of Prisons for a period of forty-eight months.  Defendant, who has already commenced her term of incarceration, moves this Court for an order releasing her from the custody of the Bureau of Prisons on bond pending the disposition of her appeal.  (ECF No. 134.)  In her motion, Defendant challenges this Court's computation of financial loss for purposes of determining her offense level under United States Sentencing Guideline ("U.S.S.G.") § 2B1.1, as well as the procedural reasonableness of her sentence.  Defendant also contends that her

conviction on one of five counts is a legal nullity, as the five-year statute of limitations on the aggravated identity theft charge expired prior to the issuance of the fourth superseding indictment.

Having thoroughly considered the arguments set forth in both Defendant's and the Government's briefs, the Court determined that oral argument would not significantly aid the decisional process and dispensed with oral argument pursuant to Eastern District of Michigan Local Criminal Rule 12.1(a) and Local Rule 7.1(f)(2). For the reasons set forth herein, the Court concludes that Defendant has failed to discharge her burden of demonstrating that her appeal raises substantial questions of law. Accordingly, the Court will deny her motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant's convictions stem from two different fraudulent schemes. First, Defendant, who once made a living brokering mortgage loans, engaged in a mortgage fraud scheme that caused certain lenders to approve loans for unqualified applicants based upon false information provided on their loan applications. Second, Defendant supplied false information in a credit card application she took out in her then minor son's name, whose identity she stole to rack up credit card debt that she subsequently failed to pay.

On December 29, 2011, a federal grand jury returned a Second Superseding Indictment in this case, charging Defendant with one count of conspiracy to

2

commit bank fraud in violation of 18 U.S.C. § 1349 (count one), two counts of

bank fraud in violation of 18 U.S.C. § 1344 (count three involved fraudulent

residential loan applications submitted to federally-insured banks, while count four

alleged Defendant submitted materially false credit card applications), and one

count of aggravated identity theft in violation of 18 U.S.C. § 1028A (count five).[1]

(ECF No. 18.)  The identity theft alleged by the Government involved Defendant

applying for and receiving a credit card in her minor son's name, racking up

numerous charges, and failing to pay for those charges.  (*Id.*)

A fourth superseding indictment was returned in August of 2013.[2]  (ECF No.

70.)  The indictment contained five counts related to bank fraud (counts one

through four implicated 18 U.S.C. § 1344, three counts related to loans obtained on

various parcels of real property and one related to fraudulent credit card

applications) and identity theft (count five).

Defendant proceeded to trial, which began on December 2, 2013.  After six

days of testimony and argument, the jury unanimously convicted Defendant on all

five counts.  (ECF No. 114, Pg ID 1589-92.)

---

[1] When the grand jury returned the true bill, Defendant was one of two defendants in the case.  Count two of the Second Superseding Indictment applied solely to the other defendant.

[2] By the time the fourth superseding indictment issued, Defendant was the only remaining defendant, as her co-defendant had entered a plea of guilty.

The Court conducted a bifurcated sentencing hearing, addressing the financial loss of the crimes for purposes of imposing a term of incarceration on September 3, 2014, and addressing the actual loss for purposes of restitution on September 29, 2014.[3] The central issue in dispute for sentencing purposes was the computation of the financial loss incurred by the various lenders under U.S.S.G. § 2B1.1 (Nov. 1, 2013), which increases the base offense level proportionate to the financial loss associated with the crime.

At the September 3, 2014 hearing, the Court, with input from counsel and the probation department, calculated a sentencing guidelines range of thirty-seven to forty-six months based on an actual loss amount of more than $400,000 but less than $1,000,000, and imposed a below-guidelines sentence of twenty-four months on counts one through four.[4] (ECF No. 116, Pg ID 1656-58.) The Court also imposed the statutorily-mandated twenty-four-month sentence on the aggravated identity theft conviction, to run consecutive with the twenty-four-month sentence

---

[3] The Court's intention was to complete the sentencing on September 3, 2014. The Court deferred the calculation of restitution until after it imposed Defendant's sentence, calling for a short recess in hopes that counsel would reach an agreement as to the restitution amount. (ECF No. 116, Pg ID 1660.) The attorney for the Government, however, was unable to meet with defense counsel at that time, as he was in trial in front of another judge on this bench. (*Id.*)

[4] To calculate the guidelines range, the Court started with the base offense level of seven points and applied a fourteen-level enhancement representing a loss amount between $400,000 and $1,000,000 under U.S.S.G. § 2B1.1(b)(1)(H). With a total offense level of twenty-one and a criminal history category I, the advisory guidelines range was thirty-seven to forty-six months.

on the other four counts.  (*Id.* at Pg ID 1657.)  In response to defense counsel's

inquiry, the Court noted that it was not opposed to permitting Defendant to self-

surrender to the custody of the Bureau of Prisons at a later date.

      The sentencing hearing resumed on September 29, 2014, at which time the

parties addressed the issue of restitution.[5]  The hearing opened with defense

counsel explaining to the Court that he and the Government attorney "reached a

resolution in regard to the total loss that should be attributable [to Defendant.]"

(ECF No. 117, Pg ID 1666.)  Counsel explained that the total loss for restitution

purposes amounted to $391,855.16; of that amount, the parties agreed that

$41,855.16 would be payable to American Express, with the balance ($350,000)

payable to SunTrust Mortgage.  (*Id.* at Pg ID 1166-67.)  This agreed-upon figure,

however, conflicted with the figure presented by the parties at the previous

hearing, which, it bears repeating, exceeded $400,000.  This is significant because

the new figure lowered Defendant's offense level to nineteen (from twenty-one),

with a corresponding reduction in the advisory guidelines range from thirty-seven

to forty-six months to thirty to thirty-seven months.  (*Id.* at 1669.)  The Court

acknowledged this change at the second hearing, explicitly correcting the record

with regard to the advisory guidelines range.  The Court declined to otherwise alter

---

[5] The Court notes that Defendant filed a notice of appeal on September 17, 2015, even though no judgment had yet been entered due to the continuing need to resolve the restitution issue.  (ECF No. 100.)

the sentence it previously imposed, noting that Defendant had benefitted from a
variance on counts one through four.  The Court stated its continued belief "that a
24-month sentence is [] appropriate" on counts one through four and, therefore,
imposed the same sentence it had at the previous hearing.  (*Id.*)  Subsequently, the
Court accepted "the amount agreed to by the parties of $391,855.16[]" for
purposes of restitution.  (*Id.* at Pg ID 1670.)  Prior to concluding, the Court ensured
that neither party had any unresolved objections to the sentence.  (*Id.*)

On November 4, 2014 – subsequent to the imposition of the sentence but
prior to Defendant self-surrendering to the Bureau of Prisons – the parties filed a
joint motion to extend Defendant's voluntary surrender date beyond the originally-
scheduled date of November 6, 2014.  (ECF No. 106.)  The Court granted this
motion the following day, and extended Defendant's reporting date to February 6,
2015.  (ECF No. 107.)  Upon Defendant's February 3, 2015 motion, the Court once
again postponed Defendant's reporting date, this time until June 10, 2015.  (ECF
Nos. 118, 119.)  In mid-May 2015, Defendant once again sought an extension of
her reporting date.  (ECF No. 130-31.)  The Government responded to this third
request on May 29, 2015, urging the Court to deny Defendant's motion.  (ECF No.
132.)  In an Order entered on June 1, 2015, the Court denied Defendant's motion,
explaining that an additional extension was not warranted.  (ECF No. 133.)

Defendant self-reported to FCI Alderson located in West Virginia on June 10, 2015, and has been serving her sentence since that time.[6]

On June 17, 2015, Defendant filed a motion for release on bond pending appeal and the Government responded on July 13, 2015.  (ECF Nos. 134, 137.)

## II.   GOVERNING LEGAL STANDARD

Pursuant to the Bail Reform Act of 1984, a defendant found guilty and sentenced to a term of imprisonment may be released on bond pending appeal if the trial court finds that the defendant has satisfied the criteria delineated in 18 U.S.C. § 3143(b)(1).  The statute provides, in pertinent part:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal[,] . . . be detained, unless the judicial officer finds - -
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and
> >
> > (B) that the appeal is not taken for the purpose of delay and raises a substantial question of law or fact likely to result in - -
> >
> > > (i)  reversal,
> > >
> > > (ii)  an order for a new trial,

---

[6] Defendant's brief indicates that "on the advice of previous counsel[,] [Defendant] filed a Motion to extend the time for self-surrender and because that was ruled on shortly before her reporting, this Motion had to be filed subsequent to her start at Alderson."  (Def.'s Br. 2.)

7

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1). The statute creates a presumption against release pending appeal. *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002) (citing *United States v. Vance*, 851 F.2d 166, 169-70 (6th Cir. 1988)). In overcoming this presumption, the burden of proof rests with the defendant. *Vance*, 851 F.2d at 170 (citing *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985)).

To determine if an appeal raises a substantial question of law or fact, the United States Court of Appeals for the Sixth Circuit applies a two-part test devised by the Eighth Circuit in *United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985) (en banc). *Pollard*, 778 F.2d at 1182. A court first determines whether the question is "substantial" in the sense that it constitutes a "close question or one that could go either way." *Id.*; *see also United States v. Mikell*, No. 97-81493, 2007 U.S. Dist. LEXIS 4233, at *6 (E.D. Mich. Jan. 22, 2007) (Cleland, J.) ("Courts have also held that a substantial question is 'either a novel question, one that has not been decided by controlling precedent, or one which is fairly doubtful.'"). If the reviewing court finds that the question is "substantial," it must then assess whether the question "is so integral to the merits of the conviction [or sentence] that it is more probable than

8

not that reversal or a new trial will occur if the question is decided in the

defendant's favor."  *Pollard*, 778 F.2d at 1182.

### III.   ANALYSIS

Defendant argues that her appeal raises substantial questions of law based on

(1) this Court's improper application of U.S.S.G. § 2B1.1 in determining the

"reasonably foreseeable pecuniary harm" caused by her conduct, (2) this Court's

sentencing procedure, and (3) the expiration of the statute of limitations with

respect to the aggravated identity theft count.  Because Defendant's appeal raises

no substantial questions of law, the Court must deny her motion.[7]

**A.   Defendant Has Not Raised a Substantial Question of Law on the Issue of the Actual Loss Calculation.**

As succinctly stated by the United States Court of Appeals for the Sixth

Circuit,

> In determining loss under U.S.S.G. § 2B1.1, a sentencing court must
> use the greater of actual or intended loss.  U.S.S.G. § 2B1.1 cmt.
> n.3(A).   The Guidelines define "actual loss" as "reasonably
> foreseeable pecuniary harm," which connotes the monetary harm "the
> defendant knew or, under the circumstances, reasonably should have
> known, was a potential result of the offense."  *Id.* at cmt. n.3(A)(i),
> (iii), (iv). "Intended loss" is "the pecuniary harm that was intended to

---

[7] Because the Court concludes that Defendant has failed to discharge her burden of demonstrating the existence of a substantial question of law or fact, the Court need not address the issue of whether Defendant is a flight risk or whether her release would endanger the community.  The Court does note, however, that Defendant's multiple requests to extend her reporting date raise a question as to whether the present motion was filed for the purpose of delay, particularly in light of the frivolity of the arguments advanced in the pending motion.

result from the offense," including "pecuniary harm that would have been impossible or unlikely to occur." *Id.* at cmt. n.3(A)(ii).

*United States v. Wendlandt*, 714 F.3d 388, 393-94 (6th Cir. 2013).

In a case such as this where a criminal defendant has been found guilty of a fraud crime involving collateral, a "district court must reduce the loss by the amount of money the victim recovered by selling the collateral, or the fair market value of the property at the time of sentencing if the victim has not disposed of the collateral." *Id.* at 394 (citing U.S.S.G. § 2B1.1 cmt. n.3(E)(ii); *United States v. Minor*, 488 F. App'x 966, 969 (6th Cir. 2012) (per curiam); *United States v. Vander Zwaag*, 467 F. App'x 402, 413 (6th Cir. 2012)).

Defendant argues that this Court improperly applied U.S.S.G. § 2B1.1 in determining "reasonably foreseeable pecuniary harm" because she could not have reasonably foreseen the nationwide recession and concomitant real estate market crash, and the Government offered no evidence to the contrary. Further, Defendant contends that the Court should not have accepted the commercially unreasonable "fire-sale" valuations by the lenders, as such conduct increased the amount of loss attributable to her. (Def.'s Br. 4-5.)

Defendant's argument that she should have received a larger credit against the loss because of the unforeseeable downturn in the housing market and the diminution of the properties' values is easily disposed of, as the Sixth Circuit has, on at least two occasions, rejected this argument. As a panel of that court stated in

10

*Wendlandt*, a case in which the defendant raised the same argument Defendant

does here:

> We recently addressed and rejected this very argument in *Minor*,
> stating:
>
>> Unlike the application note regarding the determination
>> of loss, the application note regarding credits against loss
>> does not speak in terms of foreseeability. [U.S.S.G. §
>> 2B1.1 cmt. n.3(A), (E)]. The sentencing guidelines,
>> therefore, require foreseeability of the loss of the unpaid
>> principal, but do not require foreseeability with respect to
>> the future value of the collateral.
>
> *Minor*, 488 F. App'x at 969. *See also United States v. Mallory*, 461 F.
> App'x 352, 361 (4th Cir. 2012) (per curiam) ("[I]t is of no
> consequence that the housing collapse was not reasonably foreseeable
> to Mallory.  He receives the benefit of what the victims recovered, not
> what they foreseeably might have recovered."); [*United States v.*]
> *Turk*, 626 F.3d [743,] 751 [(2d Cir. 2010)] ("[A]ll of [the defendant's]
> arguments about the extrinsic forces that caused the value of the
> collateral to decline are simply irrelevant – they may or may not be
> true, and she might have earned a credit against loss if they had not
> occurred, but she may not invoke them to insulate her from
> responsibility for the loss she *caused*, namely, the loss of the unpaid
> loan principal.").  The plain language of the Guideline does not
> require that we factor extrinsic market conditions into the calculation
> of credits against loss.

*Wendlandt*, 714 F.3d at 394.

With regard to Defendant's second contention, the Court notes that it

calculated the loss resulting from her offenses by taking the mortgage loan amount

and subtracting the amount of money the lender recovered upon reselling the

collateral.  This was an entirely proper method of calculating the loss, as it is the

11

method suggested in the guideline itself.  Although Defendant claims that the

significant reduction in the properties' value should not be chargeable to her

because the lender failed to mitigate its losses by selling the properties at a steeply

discounted rate, this is merely another way of arguing that the loss was

unforeseeable.  Dressing the argument up in different clothing does not change the

outcome nor permit Defendant to escape the consequences of her conduct.

Based on the authority discussed above – most particularly *Wendlandt*, a

published case from the Sixth Circuit – Defendant's argument not only fails to

raise a *substantial* question of law, it fails to raise any question whatsoever.

**B.     Defendant Has Not Raised a Meritorious Challenge to this Court's
Sentencing Procedure.**

The presentation of Defendant's second argument is abbreviated, at best:

"Defendant is entitled to have her sentence explained on the record, including

deviations from the calculations presented, the Court with respect, did not do this."

(Def.'s Br. 4.)  The Government has framed Defendant's argument much better,

stating that Defendant's second contention "is that, after recalculating the guideline

range, it was procedurally unreasonable to depart from the guideline range and re-

impose a 24-month [sentence] without 'explain[ing] [Defendant's sentence] on the

record' during the second sentencing hearing."  (Gov't Resp. 11 (quoting Def.'s

Br. 4) (second alteration in original).)

12

The Court is not persuaded that it erred in re-imposing Defendant's below-guideline sentence, as it rejected the meritless argument, discussed above, that Defendant should not be held accountable for the financial losses because the downturn in the real estate market was not foreseeable at the first sentencing hearing. At the second sentencing hearing, and pursuant to an agreement between the parties, the Court adopted a different loss amount than it had at the initial sentencing hearing and adjusted the guideline calculation to account for the discrepancy. At this hearing, Defendant advanced only one issue, that is, whether the lower guideline range adopted at the second hearing would affect the previously-imposed sentence. (ECF No. 117, Pg ID 1666-68.) The Court answered this in the negative, and re-imposed the same twenty-four-month sentence on counts one through four that it had at the previous hearing. As the Government indicates in its brief, this Court addressed the only issue raised by Defendant at the second hearing. Given the fact that the second hearing was a continuation of the first, it was reasonable for the Court to rely on its earlier statements and reasoning as opposed to regurgitating the information once more. This is particularly true given that defense counsel indicated that he had no objections to the sentence at the conclusion of the second hearing.

In sum, Defendant has not raised a substantial legal issue with respect to this Court's sentencing procedure on appeal.

13

**C.**   **Defendant's Argument Regarding the Invalidity of Count Five due to the Expiration of the Five-Year Statute of Limitations Lacks Merit.**

Lastly, Defendant contends that the Government violated the five-year statute of limitations on the aggravated identity theft count by charging Defendant with such conduct despite agreeing "that the last date any action was taken with the credit cards at issue was May 27, 2008."  (Def.'s Br. 5.)  Pursuant to this theory, the five-year period expired prior to the issuance of the fourth superseding indictment, which was returned on August 1, 2013.  Because the charge should be dismissed based on the expiration of the limitations period, Defendant's sentence will decrease by twenty-four months as well as roughly $40,000 in restitution owed to American Express.  This argument, like the others, lacks merit, which, by definition, means that it fails to raise a substantial legal question on appeal.

It is well-settled that statutes of limitations "stop[] running with the bringing of the first indictment."  *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999) (citing *United States v. Grandy*, 544 F.2d 598, 601 (2d Cir. 1976)).  "[A] superseding indictment brought at any time while the first indictment is still validly pending" relates back to the pending indictment, provided that "it does not broaden the charges" from the previous indictment.  *Id.*  Here, the second superseding indictment, which was the first indictment to name Defendant, was filed on December 29, 2011, well within the five-year limitations period applicable to aggravated identity theft crimes.  Because the fourth superseding indictment did

14

not broaden the charges against Defendant, the fourth superseding indictment related back to the filing of the second superseding indictment for statute of limitations purposes.

Accordingly, Defendant's contention regarding the expiration of the limitations period fails to raise a substantial question of law on appeal.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Defendant has failed to raise a substantial question of law entitling her to release on bond pending appeal.  The Court therefore **DENIES** Defendant's motion for release on bond pending appeal (ECF No. 134).

**IT IS SO ORDERED.**

Dated: July 31, 2015

s/PATRICK J. DUGGAN<br>
UNITED STATES DISTRICT JUDGE

Copies to:

**John R. Hocking, III, Esq.**
**Lisa B. Kirsch Satawa, Esq.**
**Paul J. Stablein, Esq.**
**Wright W. Blake, Jr., Esq.**
**Frances L. Carlson, AUSA**
**Patrick J. Hurford, AUSA**